**SUN INSURANCE OFFICE, LTD.,**
**Plaintiff,**

v.

**GREYHOUND VAN LINES, INC.,**
**Defendant.**

**Civ. A. No. 67–252.**

United States District Court
D. Massachusetts.

Sept. 19, 1968.

---

Walter J. Connelly, Morrison, Mahoney & Miller, Boston, Mass., for plaintiff.

Daniel H. Rider, Boston, Mass., for defendant.

## OPINION

JULIAN, District Judge.

This is an action brought against a common carrier to recover for damage sustained by a shipment of electronic equipment in transit from Burlington, Massachusetts, to the consignee, the University of Minnesota Linac Laboratory at Minneapolis.

The parties have submitted the case to the Court upon stipulated facts. The sole issue raised by the parties involves the construction to be given to certain provisions of a Standard Household Goods Bill of Lading which purport to limit the defendant carrier's liability.

The case was originally instituted in the Middlesex Superior Court by plaintiff's insured but was removed by defendant. Thereafter the insurer was substituted with the assent of both original parties as the real plaintiff in interest. Rule 17(a), Federal Rules of Civil Procedure. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) and 49 U.S.C. § 20(11).[1]

Plaintiff Sun Insurance Office, Ltd. (hereinafter the "Insurer") is an insurance corporation organized and existing under the laws of the United Kingdom, with its principal place of business in London, England. Its insured, High Voltage Engineering Corporation (hereinafter the "Shipper"), is a Massachusetts corporation having its principal place of business in Burlington, Massachusetts.

Greyhound Van Lines, Inc. (hereinafter the "Carrier"), is an Indiana corporation with its principal place of business in Northlake, Illinois, and doing business in Massachusetts as a duly certified common carrier by motor of goods

---

[1]. The case was removed here by defendant as a diversity action allegedly involving more than $10,000, exclusive of interest and costs. Because plaintiff now seeks damages of only $7,680, however, the Court has been forced to consider as a threshold question whether the requisite jurisdictional amount is involved or whether, instead, the Court is required to remand the case to the State court. 28 U.S.C. § 1447(c).

The Court is of the opinion, since plaintiff's specification of the lower amount now claimed occurred after removal, that to remand the case at this point would controvert the ruling in St. Paul Mercury Indemnity Co. v. Red Cab Company, 1938, 303 U.S. 283, 295, 58 S.Ct. 586, 82 L.Ed. 845. Alternatively, the complaint states a cause of action which, although not designated as such, falls under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11), which applies to interstate motor carriers, 49 U.S.C. § 319, and may be removed to a district court of the United States if the matter in controversy exceeds $3,000, exclusive of interest and costs. 28 U.S.C. § 1445 (b).

and property for hire in interstate commerce.

At all times material to this case the defendant Carrier was a participating carrier under several tariffs regulating the carriage of household goods. The tariffs had been properly filed with the Interstate Commerce Commission, and the terms and conditions of those tariffs [2] governed the shipment here involved.[3]

On or about March 17, 1966, the Shipper shipped a quantity of electronic equipment from its place of business in Burlington, Massachusetts, to the University of Minnesota at Minneapolis. The shipment, consisting of sixty-eight shipping packages and loose articles not enclosed in shipping packages, was made under Standard Household Goods Bill of Lading and Freight Bill No. 41622 (hereinafter the "bill of lading") issued by the defendant Carrier.

The terms and conditions printed on the back of the bill of lading conformed with those set forth in Tariff No. 107-B. Tariff No. 107-B, in turn, had been filed with the I.C.C. pursuant to an earlier I.C.C. order [4] which authorized the Carrier to fix and maintain rates for transporting household goods, which rates varied depending upon the value of the shipment which the shipper declared in writing. Under Tariff No. 107-B,

and similarly under the terms and conditions set forth on the bill of lading, the Carrier's liability was limited to thirty cents per pound for each article shipped unless a different value was declared by the Shipper.

In this case the Shipper's authorized agent declared in writing on the bill of lading that the lump-sum value of the entire 25,600-pound shipment was $40,-000. In fact, the full actual cash value of the entire shipment was $160,000.

En route to Minnesota sixteen of the sixty-eight shipping packages and loose articles were damaged. The cause of the damage was not included within the exceptions enumerated on the back of the bill of lading. The undamaged portion of the shipment was delivered intact to the consignee. The Carrier returned the sixteen damaged items, namely, articles in shipping packages and loose articles not enclosed in shipping packages, having a combined gross shipping weight of 8,920 pounds, to the Shipper's place of business in Massachusetts, where the Shipper repaired them and reshipped them to the consignee.

The Shipper subsequently filed with the Carrier in proper form a damage claim for $18,925.27, representing the actual cost of repairing and replacing the damaged portion of the shipment, plus a service markup. Defendant Car-

2. The two tariffs were:
   (1) Household Goods Carriers' Bureau, Agent, Participating Carrier and Scope Tariff No. 111, MF–I.C.C. No. 125, filed March 18, 1965, and amendments attached thereto, hereinafter referred to as "Tariff No. 111" [Exh. 5]; and
   (2) Household Goods Carriers' Bureau, Agent, Tariff No. 107–B, MF–I.C.C. No. 121, Naming Local, Joint, Distance and Commodity Rates, Also Export-Import Rates on Household Goods Between Points Within the United States, and the amendments attached thereto, hereinafter referred to as "Tariff No. 107–B [Exh. 4].

3. The term "household goods" was defined in Tariff No. 111 (Section I, n. 2, p. 11) as meaning:
   "personal effects and property used or to be used in a dwelling when a part of the equipment or supply of such dwelling, furniture, fixtures, equipment and the property of stores, offices, museums, institutions, hospitals, or other establishments when a part of the stock, equipment or supply of such stores, offices, museums, institutions, hospitals, or other establishments, and articles * * * which because of their unusual nature or value require specialized handling and equipment usually employed in moving household goods."

4. I.C.C. Released Rates Order No. MC–362, Application No. MC–573, entered May 24, 1954, under Sections 20(11) and 219 of the Interstate Commerce Act [Exh. 6].

rier has not paid the claim, and this suit followed. Plaintiff Insurer became subrogated to the Shipper's claim when it paid to the Shipper the full amount of the claim.

The present dispute stems from conflicting interpretations of that provision in the terms and conditions of the bill of lading which defines the Carrier's liability when the Shipper has underdeclared the value of the goods shipped. The pertinent portion, Section 1 of the "Contract Terms and Conditions," provides in relevant part as follows:

"SECTION 1. The carrier shall be liable for physical loss of or damage to any articles from external cause while being carried or held in storage in transit EXCEPT for [certain types and causes of damage not relevant here].

"SUBJECT, in addition to the foregoing, to the further following limitations on the carrier's liability:

"(1) To 30 cents per pound of the weight of the lost or damaged article if the shipper has failed to make, in writing, any declaration of the value of the entire shipment * * *; or

"(2) If shipper has declared a value on the entire shipment less than the full actual value thereof, (a) to that proportion of the actual loss or damage represented by the percentage which the value declared on the entire shipment bears to the full actual cash value of the entire shipment, or (b) to the amount of actual loss or damage not exceeding thirty (30) cents per pound of the gross weight of each shipping package or loose article not enclosed in a shipping package, whichever is the greater; or

"(3) To the amount of actual loss or damage, if shipper has declared in

writing the full actual value of the entire shipment."

The defendant Carrier contends and plaintiff Insurer concedes [5] that, if the formula set forth in subsection 2(a) of the foregoing is applied, the Carrier's liability is $4,731.31.[6] The parties disagree, however, as to the correct result if the formula set forth in subsection 2(b) is used.

The plaintiff Insurer argues that under subsection 2(b) thirty cents per pound should be multiplied by the total weight in pounds of all shipping packages and unpacked articles in the entire 25,600-pound shipment, producing the figure $7,680. Since that exceeds the $4,731.31 realized under the formula in subsection 2(a), and since the bill of lading provides that the larger of 2(a) and 2(b) shall represent the Carrier's liability, the plaintiff here seeks $7,680.

The Carrier, in contrast, construes subsection 2(b) as calling for the multiplication of thirty cents per pound by the total gross weight of those shipping packages and loose, unpacked articles which were actually damaged (8,920 pounds),[7] for a resultant product of $2,676. That being less than the $4,731.31 arrived at under the formula of subsection 2(a), the defendant Carrier contends that subsection 2(b) is inapplicable. The Carrier thus argues that it owes $4,731.31.

I rule that defendant Carrier's interpretation of subsection 2(b) is correct.

The language in the bill of lading that relates to subsection 2(b) reads as follows:

"The carrier shall be liable for physical loss of or damage to any articles from external cause while being carried or held in storage in transit. * *

5. Plaintiff's brief at p. 3.

6. Since the value declared ($40,000) represents 25 per cent of the full actual cash value of the entire shipment ($160,000), that percentage (25%) of the actual loss or damage ($18,925.27) constitutes the

upper limit of liability under the formula of subsection 2(a). Twenty-five per cent of $18,925.27 is $4,731.31.

7. See paragraph 3 of the Further Stipulation of Facts.

"SUBJECT * * * to the * * following limitations on the carrier's liability:

* * * * * *

"(2) If shipper has declared a value on the *entire shipment* less than the full actual value thereof, * * * (b) to the amount of actual loss or damage not exceeding thirty (30) cents per pound of the gross weight of *each shipping package or loose article not enclosed in a shipping* package. * * " (Emphasis supplied.)

On the five separate occasions in the relatively brief three paragraphs covering the further limitations on the carrier's liability when it was obviously the plain intention to refer to the entire shipment, the very words "the entire shipment" were used and none other. If it was intended in clause (b) that the weight of the entire shipment was to be multiplied by thirty cents, it is incredible that the words "each shipping package or loose article not enclosed in a shipping package" would have been used in place of the words "the entire shipment."

It is clear that in the context in which they are used the words in question do not refer to the weight of the entire shipment but to the weight of each damaged shipping package and each damaged loose article not enclosed in a shipping package.

In its memorandum of law (page 3) the plaintiff contends as follows:

"[T]he document [Exh. 1] indicates there was an additional charge to the shipper of $200.00 for declaring the lump sum value of the entire shipment to be $40,000.00, rather than releasing for 30 cents per pound. We can assume from this that in the event the shipment is damaged, the shipper will receive greater protection than if he had released it for 30 cents per pound. If option 2(b) is construed to mean that he is entitled to get only 30 cents per pound of the damaged items, then he is getting no more than if he had released it without declaring

any value on the shipment and the clause is rendered meaningless, a useless appendage."

This is not so. By declaring a value on the entire shipment the shipper received the added protection of subsection 2(a) which in this case means the difference between $4,731.31, the amount computed under subsection 2(a), and $2,676.00, the amount computed under subsection (1), supra.

I therefore find that plaintiff is entitled to recover from the defendant the sum of $4,731.31, plus interest and costs.

Judgment shall be entered accordingly.